Metcalfe, J.
The plaintiff in error was arrested upon a complaint made before the mayor of New Alexandria, charging him with keeping a place where intoxicating liquors were unlawfully sold in violation of law, and upon trial before the mayor was convieted.
The plaintiff urges the following errors. First, that the mayor was so prejudiced he could .not give the plaintiff a fair trial. Second, that the mayor had no jurisdiction. Third, that the *78 plaintiff had the right o£ a trial by jury, and fourth, that there was no law in force making the sale of liquors unlawful within the state of Ohio at the time the alleged offense was committed, and consequently there could be no. prosecution for keeping a place where liquors are sold contrary to law.
As to the first proposition, an affidavit was filed by the plaintiff in which, after stating the circumstances of his arrest, he avers that the'mayor had stated in court at some time, not at the time he was upon trial, that persons who were brought before him and who pleaded “Guilty” would be fined $300, and that those who stood trial would be fined $500; thus, giving notice to those who were brought before him charged with a crime, they would be convicted in any event, and if they stood trial that they would receive a much more severe punishment than if they pleaded “Guilty.” Of course, this statement, if made, was exceedingly improper, and if there was anything in the record to show that that attitude of the mayor was carried into this case, it would reverse the case* undoubtedly, but we do not find that it worked to the prejudice of the plaintiff, for upon the undisputed evidence in the ease it was the duty of the mayor to convict him.
As to the question of the jurisdiction of the mayor to try this case without the intervention of a jury Section 4536 gives to the mayor authority co-extensive with the county, to try cases of misdemeanor where the penalty is by fine only.
In the case of Inwood v. State, 42 O. S., 186, the Supreme court held in cases of prosecutions for misdemeanors where the punishment was by fine only that the defendant did not have a constitutional right to a trial by jury.
In Cincinnati v. Steinkamp, 54 O. S., 290, the case is cited with approval, and in In re Kinsel, 64 Kansas, 5; 56 Lawyer’s Reports Annotated, 475, the case is discussed and followed.
The same question was before the Kansas court as in the Inwood case. The Inwood case is expressly followed in State v. Smith, 69 O. S., 196, and is cited as determining that question authoratively in State v. Borham, 72 O. S., 358. So, we think that question is not an open question now.
*79 The only remaining question in this case is as to whether there was a law in force which made the sale of intoxicating liquors at the time the acts charged in this affidavit were committed, unlawful.
Section 13195 provides:
“"Whoever keeps a place where intoxicating1 liquors are sold, furnished or given away in violation of law, shall be fined, etc. ’ ’
This act is charged to have taken place on the 9th day of October, 1919, subsequent to the 26th day of May, 1919, when the Prohibition Amendment to the Constitution went into effect. It is insisted that by virtue of that amendment the existing laws relating to the sale of intoxicating liquors were repealed.
Section 9 of Article 15 is the section prohibiting the manufacture and sale of intoxicating liquors and reads as follows:
“The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes. ’ ’
At the time that the acts charged in this affidavit were committed, it is said that there was no law in effect providing penalties for the sale of intoxicating liquor. No law had been passed that was effective, at least, to carry into effect the provisions of the prohibition amendment, and probably most of the legislation relating to the sale of intoxicating liquors which was upon the statute books, was repealed or at least became inoperative when the prohibition section went into effect.
But, would the constitutional amendment repeal a law which was not in any way obnoxious to any of its provisions? That section was in effect before the constitutional amendment was passed. But the amendment does not expressly or by implication repeal it. If it repealed any laws at all, it would be only such as were obnoxious to its provisions or such laws as it was designed to do away with like the various local option laws, but, would it repeal a law which imposed a penalty for keeping *80 a place where intoxicating liquors were unlawfully sold? "We think not.
It is insisted that the laws passed by the General Assembly at that time imposing penalties for sales of intoxicating liquors, were not in force, there could be no unlawful sale, and consequently the beeping of a place would not be unlawful; but does it follow that the sale of intoxicating liquors as a beverage was not unlawful because no penalty was attached to the act of selling it?
The sale is expressly prohibited by the Constitution itself; therefore, it is unlawful. It is true that no penalty attaches to the sale of intoxicating liquors until the Legislature has enacted laws which impose a penalty, but that makes no difference with the fact itself that the sale of intoxicating liquors was unlawful. It was unlawful’ because it was prohibited by the Constitution.
It is not the penalty itself that makes the sale unlawful, but it is unlawful because it is prohibited. The sale itsef, being unlawful, it follows that keeping a place where intoxicating liquors are sold as a beverage is keeping a place in violation of law, to-wit, in violation of the constitutional provision forbidding it.
Therefore, we think there is no prejudicial error in the record in this case and the judgment is affirmed.
Judgment affirmed.

Affirmed by the Supreme Court, February 15, 1921.